IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ROBIN COVINGTON, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action  MJM-22-725 |
| AMERICAN AIRLINES, INC., | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Robin Covington ("Plaintiff") commenced this civil action against American Airlines, Inc. ("Defendant" or "AA") asserting claims of negligence, intentional infliction of emotional distress, breach of contract, and vicarious liability and seeking a judgment exceeding $75,000. ECF 1-1 ("Compl.") at 5–7. Defendant removed this matter from the Circuit Court of Maryland for Anne Arundel County to this Court, ECF 1, and both parties have consented to proceed before a United States magistrate judge pursuant to 28 U.S.C. § 636(c), ECF 11. Currently pending is Defendant's Motion to Dismiss for Lack of Personal Jurisdiction. ECF 13. Plaintiff filed an opposition to the motion, ECF 14, and Defendant filed a reply, ECF 15. The Court has reviewed the filings and finds that no hearing is necessary. Loc. R. 105.6. For the reasons stated below, Defendant's motion will be DENIED.

**I.     BACKGROUND**

Plaintiff is a resident of Baltimore County, Maryland. Compl. ¶ 1. She purchased AA plane tickets to travel from Maryland to Miami, Florida for a family gathering and departed from Baltimore-Washington International Thurgood Marshall Airport ("BWI") on January 15, 2020. Compl. ¶¶ 6–7. Plaintiff alleges in the Complaint that, on January 18, 2020, she and her husband departed on AA Flight 1577 from Miami to Charlotte, North Carolina, for their return trip to

Maryland. Compl. ¶ 9. The Complaint further states that Plaintiff and her husband changed planes in Charlotte to continue their trip on AA Flight 2799 to BWI. Compl. ¶ 10.

Plaintiff alleges that she had a series of verbal altercations with AA employees concerning Plaintiff's luggage and seat placement while boarding Flight 2799 that resulted in injuries. Compl. ¶¶ 11–41. According to the Complaint, these encounters occurred both at the gate and after Plaintiff boarded the plane and involved condescending and humiliating remarks, "yelling," and "aggressive behavior" by gate agents. Compl. ¶¶ 17–25. At one point, Plaintiff alleges, a gate agent "charged aggressively at" her, invading her personal space and placing her "in fear of physical harm." Compl. ¶ 19. The Complaint states that the gate agent demanded that Plaintiff be removed from the plane because she was "too sick to fly." Compl. ¶ 28. Plaintiff alleges that, during this confrontation, she was "trembling" and visibly distraught, and she eventually "took her medication because she could not tell if she was having a stroke." Compl. ¶¶ 22, 26, 30. A flight attendant and a supervisor came to Plaintiff's aid, according to the Complaint. Compl. ¶¶ 26–33. Plaintiff alleges that the supervisor apologized for the gate agent's conduct and took Plaintiff's statement. Compl. ¶¶ 32, 33. The incident delayed the flight approximately 30 minutes. Compl. ¶ 32.

As a result of the incident, Plaintiff was "emotionally unstable" during the return flight to Maryland. Compl. ¶ 35. Upon arrival at BWI, Plaintiff was informed that "her bags never left the Charlotte Airport[,]" which she believes was done intentionally by the gate agent, and Plaintiff's luggage did not arrive until the next day. Compl. ¶¶ 36, 37. Plaintiff alleges that the incident "greatly impacted" her, resulting in sleep disturbances, "heart irregularities," social withdrawal, "crying spells, anxiety and depression," and post-traumatic stress disorder. Compl. ¶¶ 38–41.

Plaintiff filed suit in the Circuit Court of Maryland for Anne Arundel County. Following removal of this matter to federal court, Defendant filed a Motion to Dismiss for Lack of Personal

Jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. ECF 13. Defendant argues that this Court lacks general jurisdiction of Defendant because it is a corporation headquartered in Texas and incorporated in Delaware. *Id.* at 1. Furthermore, Defendant argues, specific jurisdiction is lacking because "[t]he incident that allegedly caused Plaintiff's injuries did not occur in Maryland[]" and "does not arise out of conduct directed at Maryland." *Id.* at 2. Defendant disputes Plaintiff's allegations that the alleged altercations with AA gate agents occurred in North Carolina. Attached to Defendant's motion are documents appearing to indicate that the events alleged in the Complaint occurred in Florida, while Plaintiff was boarding AA Flight 1577 from Miami to Charlotte.[1]

The Court does not find the dispute concerning whether the incident occurred in Florida or North Carolina material to its resolution of Defendant's motion. In either event, this Court's exercise of personal jurisdiction over Defendant would be authorized by Maryland's long-arm statute and would be consistent with the requirements of the Due Process Clause of the Fourteenth Amendment. For those reasons, explained further below, Defendant's motion will be denied.

**II.     APPLICABLE LAW**

The Due Process Clause of Fourteenth Amendment "limits a state court's power to exercise jurisdiction over a defendant." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 209 L. Ed. 2d 225, 141 S. Ct. 1017, 1024 (2021). Rule 4 of the Federal Rules of Civil Procedure authorizes the district court to "exercise personal jurisdiction over a defendant in the manner provided by state law." *Carefirst of Md., Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003);

---

[1] One such document, which appears to reflect flight histories for Flight 1577 (Miami to Charlotte) and Flight 2799 (Charlotte to BWI), indicates that the former flight was delayed but the latter was not. ECF 13-2; *see also* Compl. ¶ 32 (alleging that the flight was delayed by approximately 30 minutes due to the incident). Additionally, a second document purporting to list the names of crew members for the two flights indicates that flight attendants identified in the Complaint as being present for the incident were assigned to Flight 1577 and not Flight 2799. *Compare* ECF 13-3, *with* Compl. ¶ 34.

3

*see also* Fed. R. Civ. P. 4(k)(1)(A) ("Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant … who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located[.]"). "[F]or a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Id.*

Maryland's long-arm statute provides that "[a] court may exercise personal jurisdiction over a person, who directly or by an agent … [c]auses tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State[.]" Md. Code, Cts. & Jud. Proc. § 6-103(b)(4). "The Maryland courts have consistently held that the state's long-arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Constitution." *Carefirst of Md.*, 334 F.3d at 396 (citing *Mohamed v. Michael*, 279 Md. 653, 370 A.2d 551, 553 (1977)). As a result, "[t]he statutory and constitutional requirements" for specific jurisdiction "ultimately collapse into virtually the same analysis." *Bradley v. DentalPlans.com*, Civ. No. CCB-20-1094, 2022 WL 2973979, at *3 (D. Md. July 27, 2022) (quoting *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 61 n.3 (4th Cir. 1993)).

The U.S. Supreme Court recognizes two types of personal jurisdiction: general and specific. *Ford Motor*, 141 S. Ct. at 1024. General jurisdiction "extends to any and all claims brought against a defendant[,]" but "[o]nly a select set of affiliations with a forum will expose a defendant to such sweeping jurisdiction[,]" such as when the forum is a corporate defendant's

"place of incorporation" or "principal place and principal place of business." *Id.* (citations omitted, cleaned up). Specific jurisdiction "covers defendants less intimately connected with a [forum] State, but only as to a narrower class of claims." *Id.* A defendant subject to specific personal jurisdiction "must take some act by which it purposefully avails itself of the privilege of conducting activities within the forum State." *Id.* (citation omitted, cleaned up). Such a defendant's contacts with the forum "must show that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there." *Id.* at 1025 (quoting *Walden v. Fiore*, 571 U.S. 277, 285, 134 S. Ct. 1115, 188 L.Ed.2d 12 (2014)). Additionally, "[t]he plaintiff's claims … 'must arise out of or relate to the defendant's contacts' with the forum[]" in order for the forum to exercise specific jurisdiction of the defendant. *Id.* (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 262, 137 S. Ct. 1773, 1780, 198 L. Ed. 2d 395 (2017)). The phrase "arise out of" indicates a causal relation, while "relate to" "contemplates that some relationships will support jurisdiction without a causal showing." *Id.* at 1026. Ultimately, a court's exercise of personal jurisdiction "depends on the defendant's having such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'" *Id.* at 1024 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316–317, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).

The U.S. Court of Appeals for the Fourth Circuit has reduced "the due process requirements for asserting specific personal jurisdiction" to a three-prong test considering: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *UMG*

5

*Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 351–52 (4th Cir. 2020) (citing *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009)).

A motion to dismiss under Fed. R. Civ. P. 12(b)(2) tests whether the federal district court is permitted to exercise personal jurisdiction over a defendant in a specific case. *Lewis v. Willough at Naples*, 311 F. Supp. 3d 731, 734 (D. Md. 2018). The court has discretion to decide a Rule 12(b)(2) motion without an evidentiary hearing "where, as here, the existence of personal jurisdiction does not turn on disputed factual questions."[2] *Id.* at 734 n.2 (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). The court may address the issue of personal jurisdiction based on "motion papers, supporting legal memoranda and the relevant allegations of a complaint," and, in such a case, the plaintiff bears the burden of making a *prima facie* showing "to survive the jurisdictional challenge." *Id.* (quoting *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005)). In this setting, the court must "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Rao v. Era Alaska Airlines*, 22 F. Supp. 3d 529, 534 (D. Md. 2014) (quoting *Mylan Labs.*, 2 F.3d at 62).

III.   ANALYSIS

The Court may exercise personal jurisdiction over Defendant in this matter. First, personal jurisdiction over Defendant is authorized by Maryland's long-arm statute. Specifically, the statute authorizes Maryland courts[3] to exercise personal jurisdiction over a party who, either directly or

---

[2]   As noted above, the existence of personal jurisdiction in this case does not turn on the parties' dispute over whether the incident at issue in this case occurred in connection with the Miami-Charlotte flight or the Charlotte-BWI flight. *See Selke v. Germanwings GmbH*, 261 F. Supp. 3d 666, 671–75 (E.D. Va. 2017) (finding personal jurisdiction over non-resident airline defendant in Virginia where the incident at issue occurred during a flight operated by a separate foreign carrier between Spain and Germany).

[3]   *See* Fed. R. Civ. P. 4(k)(1)(A) (authorizing a federal district court to exercise personal jurisdiction over defendants who are "subject to the jurisdiction of a court of general jurisdiction in the state where the

through an agent, causes tortious injury, even outside of Maryland, if the party "regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State." Md. Code, Cts. & Jud. Proc. § 6-103(b)(4). It is apparent that Defendant regularly does business in Maryland and derives substantial revenue from services used and consumed in Maryland. Plaintiff, a Maryland resident, is one such consumer, having purchased from Defendant air transportation services in Maryland. And, in the Complaint, Plaintiff alleges that Defendant caused her tortious injury.

Second, Plaintiff has made a *prima facie* showing that the Court's exercise of personal jurisdiction over Defendant comports with due process. Addressing the first prong of the Fourth Circuit's three-prong test, Defendant "purposefully availed itself of the privilege of conducting activities in the State [of Maryland,]" *UMG Recordings*, 963 F.3d at 352, by conducting business transactions and operating as a common carrier for air transportation to and from BWI in Maryland.[4] Public records reflect that Defendant is registered to conduct business in Maryland and

---

district court is located"); *Carefirst of Md.*, 334 F.3d at 396 (district court authorized to "exercise personal jurisdiction over a defendant in the manner provided by state law").

[4] The Fourth Circuit has identified "various nonexclusive factors to consider" in deciding whether a defendant has purposefully availed itself of a forum:

> (1) whether the defendant maintained offices or agents in the State; (2) whether the defendant maintained property in the State; (3) whether the defendant reached into the State to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the defendant made in-person contact with a resident of the State regarding the business relationship; (7) whether the relevant contracts required performance of duties in the State; and (8) the nature, quality, and extent of the parties' communications about the business being transacted.

*UMG Recordings*, 963 F.3d at 352 (quoting *Sneha Media & Entm't, LLC v. Associated Broad. Co. P. Ltd.*, 911 F.3d 192, 198–99 (4th Cir. 2018)). Purposeful availment, however, is flexible and "not susceptible to a mechanical application[.]" *Id.*

is in good standing.[5] Plaintiff purchased airline tickets from Defendant in Maryland and entered a contract obligating Defendant to provide a round trip beginning and ending in Maryland. As such, Defendant should have reasonably anticipated being haled into court in Maryland. *See Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 559–60 (4th Cir. 2014) ("[I]n determining whether a foreign defendant has purposefully availed itself of the privilege of conducting business in a forum state, we ask whether 'the defendant's conduct and connection with the forum [s]tate are such that he should reasonably anticipate being haled into court there.'") (quoting *Fed. Ins. Co. v. Lake Shore Inc.*, 886 F.2d 654, 658 (4th Cir. 1989)). Furthermore, Defendant has itself haled others into court in Maryland. Public records reflect numerous civil actions filed by Defendant in Maryland courts.[6]

Turning to the second prong, Plaintiff has made a *prima facie* showing that her claims arise out of and relate to Defendant's activities directed at Maryland. Plaintiff's round-trip air travel beginning and ending in Maryland, which was purchased in Maryland, is the "genesis of the dispute" central to this litigation. *See UMG Recordings*, 963 F.3d at 354 ("Where activity in the forum state is 'the genesis of [the] dispute,' [the 'arising-from'] prong is easily satisfied.") (quoting *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 303 (4th Cir. 2012)). Indeed, the alleged incident and injuries that gave rise to Plaintiff's claims share a causal relationship with Defendant's business activities in Maryland. But for Defendant operating its airline business in Maryland, contracting with a Maryland resident, and providing that customer with air transportation to Maryland, Plaintiff would not have been injured, according to the Complaint. Thus, business operations and transactions in Maryland that resulted in the events and

---

[5]   *See* Maryland Dep't of Assessments & Taxation, Business Entity Search, https://egov.maryland.gov/BusinessExpress/EntitySearch.

[6]   *See* Maryland Judiciary, Case Search, https://casesearch.courts.state.md.us/casesearch/.

injuries alleged in this case meaningfully connect Defendant to this forum. *See Walden*, 571 U.S. at 290 ("The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.").

Addressing, finally, the third prong of the Fourth Circuit's test, there is an adequate *prima facie* showing that this Court's exercise of personal jurisdiction of Defendant is constitutionally reasonable. "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S. Ct. 2174, 2184–85, 85 L. Ed. 2d 528 (1985).[7] Defendant has failed to "present a compelling case" that this Court's exercise of personal jurisdiction over Defendant would be unreasonable. Defendant is a major airline carrier marketing and providing airline services across this country and the world beyond. As noted above, Defendant has sued others in Maryland on several occasions. It is clear that Defendant's participation in this litigation would not be "so gravely difficult and inconvenient" to put Defendant unfairly at a "severe disadvantage" as compared to Plaintiff. *Id.* at 478. The Court has been presented with no evidence to suggest that defending this lawsuit in this district would impose a significantly greater burden on Defendant than defending it in North Carolina or Florida. Plaintiff, on the other hand, is an individual resident of Maryland and would be subjected to a greater burden if left to pursue her claims in another district. And Maryland has an interest in adjudicating disputes involving injuries suffered in connection with transportation services contracted for and provided to and from the State.

---

[7]   In deciding whether the exercise of personal jurisdiction is constitutionally reasonable, after finding purposeful availment and sufficient contacts, a court may consider "(1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies." *Consulting Eng'rs*, 561 F.3d at 279 (citing *Burger King,* 471 U.S. at 477).

x

From the standpoint of personal jurisdiction, this case is practically identical to *Broadus v. Delta Air Lines, Inc.*, 101 F. Supp. 3d 554 (M.D.N.C. 2015). In *Broadus*, a 68-year-old resident of North Carolina purchased a round-trip ticket for the defendant, Delta Air Lines, to provide air travel from North Carolina to Florida, with a layover in Atlanta, Georgia. 101 F. Supp. 3d at 557. Plaintiff Broadus alleged that, during the layover in Atlanta, a Delta employee was negligent in providing wheelchair assistance, resulting in physical injuries to the plaintiff. *Id.* Delta was a Delaware corporation with a principal place of business in Atlanta but registered to conduct business in North Carolina. *Id.* at 558. Broadus filed suit in North Carolina state court, and Delta removed the matter to federal district court and then moved to dismiss the matter for lack of personal jurisdiction. *Id.*

The district court denied the motion. *Id.* at 562. The court found that, by conducting business and forming a contract for air travel and making in-person contact with Broadus in North Carolina, Delta "purposely availed itself of the privilege of conducting business in North Carolina." *Id.* at 560. The case also arose from and was related to Delta's contacts with North Carolina because "[t]he round-trip agreement and the departure from Greensboro were the genesis of this dispute" and Delta's business operations in North Carolina was a but-for cause of the plaintiff's injuries. *Id.* at 561. Finally, the court found that its exercise of personal jurisdiction over Delta was constitutionally reasonable "[g]iven Delta's continued business presence in North Carolina" and the non-significant burden litigation in North Carolina would impose on Delta. *Id.*

*Selke v. Germanwings GmbH*, 261 F. Supp. 3d 666, 675 (E.D. Va. 2017), is another case where a district court in the Fourth Circuit found personal jurisdiction of corporate airline defendants. Notably, the grounds for personal jurisdiction in *Selke* were significantly more attenuated than in either *Broadus* or the instant case. In *Selke*, the plaintiffs' claims arose from a

10

plane crash in the French Alps that resulted in the deaths of plaintiffs' family members, among numerous passengers and crew members. 261 F. Supp. 3d 666, 668–70. The plane was operated by a German airline, and the crash occurred during a flight between Spain and Germany, which was but one leg of a round-trip the decedents took from Virginia through multiple destinations in Europe. *Id.* at 669–70. The district court denied a Rule 12(b)(2) motion filed by defendant United Airlines finding that United purposefully availed itself of Virginia's jurisdiction by "maintain[ing] a physical presence in the forum and enjoy[ing] the protection of Virginia courts in its business dealings[,]" the plaintiff's claims arose from United's business transactions in Virginia, and "United's previous dealings with Virginia courts" established the constitutional reasonableness of finding personal jurisdiction over United in Virginia. *Id.* at 672–75.

This Court is persuaded by the reasoning in *Broadus* and *Selke* and finds their analysis fully applicable to the instant case.[8]

### IV.  ORDER

For the foregoing reasons, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction is DENIED.

<u>March 27, 2023</u>  
Date

/S/  
Matthew J. Maddox  
United States Magistrate Judge

---

[8]  Like the Maryland long-arm statute, the North Carolina and Virginia statutes are both coextensive with limits on personal jurisdiction under the Due Process Clause, thus merging the statutory analysis of personal jurisdiction with the constitutional question. *See Broadus*, 101 F. Supp. 3d at 558–59; *Selke*, 261 F. Supp. 3d at 671.